Pages:17

Case 11-10912    Doc 107    Page 1 of 17

FILED
May 26, 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0003519946

Kirk Brennan, esq.
Attorney for Debtors
21250 Hawthorne Blvd.
Suite 500
Torrance, CA 90503
T.310-922-9330; F.310-375-6141
calilawoffice@gmail.com
SBN: 265730

Attorney for Debtors Jamie
Thomas and James Thomas

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| In re: | ) |
| | ) Case No. : 2011-10912 |
| | ) |
| | ) DCN: KB-8 |
| JAMIE THOMAS and | ) |
| JAMES THOMAS | ) Chapter 11 |
| | ) Plan Confirmation Hearing: |
| | ) DATE: July 20, 2011 |
| | ) TIME: 2 P.M. |
| | ) PLACE: 1st Floor, 1300 18th St., |
| | ) Bakersfield, CA |
| | ) |
| | ) Judge Whitney Rimel |

**DEBTORS' PLAN OF REORGANIZATION**

Dated 5/25/2011

**Plan of Reorganization - Introduction**

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Bankruptcy Code") proposes to pay creditors of Jamie Thomas and James Thomas ("Debtors") from Debtors' monthly disposable income. This Plan provides for 4 or 5 classes of secured claims (depending on the outcome of the objection to proof of claim 4), 1 class of

unsecured claims, and 1 class of debtors' interests. Unsecured creditors holding allowed non-priority claims will receive distributions, which the proponent of this Plan has valued at approximately four cents on the dollar. This Plan provides for the payment of administrative claims in full on the effective date, except as may be otherwise agreed by the holder of such administrative claims.

If confirmed, the Plan will bind all creditors provided for in the Plan, whether or not they file a proof of claim, accept the Plan, object to Confirmation, or have their claims allowed. All Creditors should refer to Articles I-V of this Plan for the precise treatment of their claims.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one.**

The Disclosure Statement that accompanies this Plan contains, among other things, a discussion of Debtors' history, properties, operations, projections, and a summary and analysis of the Plan and certain related matters.

Debtors are the Plan proponents.

**Article I:  Classification and Treatment of Claims**

**Class 1: Priority Claims.**

This class includes allowed claims entitled to priority under § 507 of the Bankruptcy Code (except administrative claims under § 507(a) and priority tax claims).

X None.

**Class 2:  Unimpaired secured claims.**

This class includes claims secured by a lien on property, in which Debtor has an interest, that are unimpaired under the Plan. Debtor will cure any default that occurred before or after the petition date in this case, reinstate the maturity of that claim as such maturity existed before the default, maintain current payments, and not otherwise alter the legal, equitable or contractual rights to which that claim entitles the holder of the claim.  All arrearages shall be paid in full on the Effective Date, unless the holder of the claim agrees to

other terms.  Regular payments made thereafter will be made when due ("Regular Monthly Payments") under the documents governing the claim.

These classes are unimpaired and not entitled to vote on the Plan.

**Class 2(a)  Secured claim of:  Bank of America**

Collateral description = 28710 Gleneagle Ct, Tehachapi, CA 93561

Principal owed = $403,331 (at time of filing of petition)

Pre-petition arrearages paid on the effective date = N/A

Regular Monthly Payments = $2406.26 (includes insurance and taxes)

**Class 2(b)  Secured claim of: Kern Schools Federal Credit Union**

Collateral description = 2005 Chrysler PT Cruiser

Principal owed = $3243.68 (at time of filing of petition)

Pre-petition arrearages paid on the effective date = N/A

Regular Monthly Payments = $265.11

**Class 2(c)  Secured claim of: Kern Schools Federal Credit Union**

Collateral description = 2005 Dodge Magnum

Principal owed = $11,690.92  (at time of filing of petition)

Pre-petition arrearages paid on the effective date = N/A

Regular Monthly Payments = $495.71

**Class 3: Other Secured Claims**

This class includes claims secured by a lien on property in which Debtor has an interest, other than the unimpaired secured claims in Class 2, to the extent of the value of that creditor's interest in Debtor's interest in the property, pursuant to § 506 of the Bankruptcy Code.

The amount of the claim, if any, in excess of the secured claim is an unsecured claim which will be paid under Class 4.

Debtor has or will file a separately noticed motion asking the court to determine that the value of the collateral is the value stated below.  If a secured creditor does not oppose the motion to value its collateral, the value stated by Debtor may be determined to be the value of

the collateral.

To the extent that there are any defaults that are not being cured or paid in full on or before the effective date ("Cure Payment"), those classes are impaired and entitled to vote on the Plan.

Class 3 claims and their proposed treatment under the Plan are:

**Class 3(a) Secured claim of:  Kern Federal Credit Union**

Collateral description = 2006 Subaru Forrester

Total claim (at petition date) = $10,390.36

Value of collateral at time of filing of petition = $8390

Post-petition interest, etc., if any = N/A

Allowed secured claim = $8390

Allowed unsecured claim = $2000.96   (paid as a Class 4 Claim)

Regular Monthly Payments = $155.46

Payments begin = first month due after plan confirmation  (See Article VI)

Payments end = after 60 months of payments, or sooner if paid in full

Interest rate = 4.25 % fixed per annum, amortized over 5 years

Kern Federal Credit Union must release any encumbrance of record that it holds against the 2006 Subaru Forrester property after the Class 3(a) claim is paid in full.

**Class 3(b) Secured claim of:  Wilmington Trust Company**

**An objection to the proof of claim of Wilmington Trust Company has been filed.  The proposed treatment below will apply if the objection fails, and the claim is allowed.**

Collateral description = 310 Utah Avenue, Oceano, CA 93445

Total claim (per proof of claim 4; disputed by debtors) = $639,193.48

Value of collateral at time of filing of petition = $250,000

Post-petition interest, etc., if any = N/A

Allowed secured claim = $250,000

Allowed unsecured claim = $389,193.48   (paid as a Class 4 Claim)

Regular Monthly Payments = $1229.85

Payments begin = first month due after plan confirmation  (See Article V)

Payments end = after 360 months of payments, or sooner if paid in full

Interest rate = 4.25 % fixed per annum, amortized over 30 years

Wilmington Trust Company must reconvey its deed of trust and release any other encumbrance of record that it holds against the 310 Utah Avenue, Oceano, CA property after the Class 3(b) claim is paid in full.

**Class 4: General Unsecured Claims.**

This class includes allowed claims of general unsecured creditors.  Class 4 claims also include (a) deficiency claims of secured creditors who have foreclosed on and liquidated their collateral (if any), (b) secured creditors who have first or second deeds of trust against real property owned by Debtors, which have been deemed to be partially or wholly unsecured for purposes of this Plan, and (c) general unsecured claims arising out of the rejection of executory contracts and unexpired leases (if any).  This class is impaired and entitled to vote on confirmation of the Plan.  Total Class 4 claims are approximately $663,255.29.  This includes approximately $434,689.23 in unsecured portions of loans previously secured by first and second deeds of trust, but now treated as unsecured.  Undisputed Class 4 claims, as of this date, are listed on Exhibit B.

Class 4 claims do not accrue interest.  Each member of Class 4 shall be paid a pro rata share of its claim over five years in equal quarterly installments.  Debtors will distribute a pro rata share of quarterly payments of $1171.14 to Class 4 claimants on the first day of each calendar quarter, beginning as described in Article VI.  Pro rata means the percentage that a particular creditor's Class 4 claim bears to the aggregate of all allowed Class 4 claims.  Twenty

quarterly payments (4 quarters times five years) of $1171.14 come to a total of $23,422.80, which is estimated to pay about 4% of the total of class 4 claims.

Second deed of trust holders whose claims have been deemed by the Court to be totally unsecured are required to reconvey the deeds of trust to the debtors upon discharge.

**Class 5: Interests of the Debtors.**

The Class Five claims are the claims or interests held by Debtors. Debtors retain their assets and shall not be required to liquidate any of their assets except as provided in the Plan. Additionally, Debtors shall manage their affairs subject to the provisions of the Plan without the appointment of a trustee or other outside management or control. The assets owned by Debtors shall revest in Debtors upon entry of their general discharge.

**Article II:  Treatment of Unclassified Claims**

Under Bankruptcy Code § 1123(a)(1), (i) administrative expense claims allowed under Bankruptcy Code § 503 and entitled to priority under § 507(a)(including professional fees owed to attorneys, accountants, or other professionals retained by Debtors during the pendency of the case; United States Trustee fees; and domestic support obligations arising post petition) and (ii)  priority tax claims under § 507(a)(8) are not classified and are not entitled to vote on confirmation of the Plan.  These claims shall be treated as follows:

2.1     **Professional Fees.**  Professional fees may only be paid upon application to and approval by the Bankruptcy Court.  Debtor will pay the professional fees in full in cash on the later of (i) the Effective Date or (ii) approval by the Court, except to the extent that a holder of such claim agrees to other terms.

2.2     **Other Administrative Claims.**  Debtor will pay other claims allowed under § 503 and entitled to priority under § 507(a), including U.S Trustee fees, in full on the Effective Date

6

(although expenses arising and paid in the ordinary course of Debtor's financial affairs may be paid as due), except to the extent that a holder of these claims agrees to other terms.

Debtors believe that the only other administrative claims are U.S. Trustee fees.

2.3    Tax Claims.  Debtor will pay claims entitled to priority under § 507(a)(8) in full over time with interest in equal amortizing payments in accordance § 511 of the Bankruptcy Code. Payments will be made monthly, due on the first day of the month, starting as described in Article VI and ending on the last such date that is no more than 5 years after the petition date. Payment of priority tax claims in full within 5 years of the order for relief and on terms not less favorable than those accorded the most favored non-priority creditor is required by § 1129(9)(C).

X    None.  There are no tax claims.  Therefore no distribution will be made on tax claims.

**Article III: Allowance and Disallowance of Claims**

3.1    Disputed Claim.  A disputed claim is a claim that has not been allowed or disallowed and as to which either: (i) a proof of claim has been filed or deemed filed and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed and the Debtor has scheduled such claim as disputed, contingent, unliquidated or unknown.  Except as otherwise provided in the Plan, Debtors may object to the allowance of Claims filed with the Court.  All objections may be litigated to Final Order, or compromised, or withdrawn.

3.2    Delayed Distribution on Disputed Claims.  No distribution will be made on account of a disputed claim unless that claim is allowed by final non-appealable order.

3.3     Settlement of Disputed Claims.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**Article IV.     Claims Handling**

4.1.    Ownership and Transfer of Claims

For purposes of any Distribution under the Plan, Debtors have no obligation to recognize any transfer of Claims occurring on or after the Distribution date.  Debtors are permitted to recognize and deal for all purposes with only those Claimants of record stated on the claims docket maintained by the Court, or scheduled in the list of creditors filed with the Court under Bankruptcy Rule 1007 and not listed as disputed, contingent, or unliquidated as to amount, and to which no objection has been interposed.

4.2.    Amendments to Claims

In order for Debtors to settle disputes and otherwise implement the Plan, a proof of claim may be amended to increase or liquidate the amount or priority of such Claim after the deadline to file claims, but only as agreed upon by Debtors and the holder of such Claim, or as otherwise permitted by the Court, the Bankruptcy Rules or applicable law.  Without limiting the previous sentence in any manner, unless otherwise provided in the Plan, proofs of claim shall not be filed or amended after Confirmation of the Plan unless the amendment is solely to decrease the amount or priority of the Claim.  Any such new or amended Claim filed after the Confirmation of the Plan is disallowed in full and is expunged without any action by Debtors.

**Article V:  Executory Contracts and Unexpired Leases**

5.1     Executory Contracts and Leases Assumed.  The Debtor assumes the following executory contracts and unexpired leases, effective upon the Effective Date, and shall perform all obligations thereunder, both pre-confirmation and post-confirmation:

Debtors' several short-term rental agreements with tenants of their rental property in Oceano.

5.2     Executory Contracts and Leases Rejected.  The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not previously assumed or listed in 5.1 above, as of the Effective Date.  A proof of claim arising from the rejection of an executor contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan.  Claims arising from the rejection of an executory contract or unexpired lease under this section are general unsecured claims in Class 4, except to the extent this court orders otherwise.

Debtors are not aware of any executory contracts or leases other than those in 5.1 above.

**Article VI: Implementation**

6.1     Plan Funding.  The Plan will be funded from the disposable income of the Debtors, including salary from joint debtor's employment, royalty income, and rental income from the rental property in Oceano.  The disposable income of the Debtors is projected to be $390.38 monthly, or $1171.14 quarterly.  See Exhibit C.  After the Effective Date of the Plan and after paying Unclassified Claims and post-confirmation professional fees, on a quarterly basis and without further approval of the Bankruptcy Court, the Debtors shall distribute the quarterly payment of $1171.14 on a pro rata basis to Class 4 claimants.  Pro rata means the percentage that a particular creditor's Class 4 claim bears to the aggregate of all allowed Class 4 claims.

6.2     Method of Payment.  The method of payment is at the election of Debtors, but may include, without limitation, bank check, business check, or wire transfer.

6.3     Means of Distribution.  Distributions by mail to holders of Allowed Claims is made as follows:  (1) at the addresses set forth on the respective proofs of claim by such holders, or if no proof of claim was filed, at the address listed on Debtors' Schedules; (2) at the addresses set

forth in any written notices of address changes delivered to Debtors after the date of any related proof of claim; or, (3) at the address designated in any written agreement between Debtors and such Claimants or so designated by order of the Court.

6.4     Holding of and Failure to Claim, Undeliverable Distributions.  All Distributions are to be made by Debtors to the holder of each Allowed Claim at the holder's address as described under section 6.3.  If any holder's Distribution is returned as undeliverable, no further Distributions to such holder is made unless and until Debtors are notified of such holder's then current address, at which time all required Distributions are made to such Claimant.  Undeliverable Distributions are held by Debtors until such Distributions are claimed, so long as they are claimed within ninety (90) days following a Distribution.  After 90 days, all unclaimed Distributions revert to Debtors, and the Claim of any Claimant or its successor with respect to the Distribution is discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

**Article VII: Continued Operations**

7.1     Debtors' Post-Confirmation Operations of Rental Property.  Debtors shall continue to manage their rental property including, but not limited to: finding tenants, billing tenants, paying ordinary costs and current taxes without further order of the Court, and prosecuting any claims related to their rental operations.

7.2     Debtors' Post-Confirmation Operations Generally. Debtors retain the right to prosecute all claims arising from any dispute involving Debtors or any property within their control;

7.3     Post-Confirmation Expenses.  The reorganized Debtors are entitled to expend funds reasonably necessary to carry out the terms of the Plan.  Debtors must pay professional fees and costs only upon application to and approval of the Court for services provided through confirmation of the Plan.  Debtors must pay the expenses incurred post-Confirmation, including professional fees and costs, in the ordinary course of business.

**Article VIII:  Effects of Confirmation and Discharge**

8.1     Terms Binding. On the effective date of the Plan, all provisions of this Plan are binding upon Debtors, all Claimants, and all individuals and entities who are effected by the Plan.

8.2     Discharge. Upon completion of all payments of Class 3(a) and Class 4 claims under this Plan, the Debtor will receive a discharge of all pre-confirmation debts, whether or not the creditor files a proof of claim, accepts the Plan, or has its claim allowed, except as provided in § 1141 of the Bankruptcy Code. Such discharge will not discharge Debtor from any debts that are non-dischargeable under § 523 of the Bankruptcy Code. The Court retains jurisdiction to enter an order discharging Debtors upon Debtors' application, and the Court may enter discharge under any term of § 1141(d)(5) of the Code.

8.3     Injunction. Upon entry of discharge, Claimants are permanently enjoined from commencing or continuing any action to collect, recover, or offset any released Claim as a personal liability of Debtors, as provided by section 524 of the Code.

8.4     Vesting of Property. Property of the estate will not revest in Debtor until such time as a discharge is granted or the court approves a written waiver of discharge.

8.5     Plan Creates New Obligations. The payments promised in the Plan constitute new contractual obligations that replace those obligations to creditors that existed prior to the Effective Date.

8.6     Creditor Action Restrained. Creditors may not take any action to enforce either pre-confirmation obligations or obligations due under the Plan, so long as the Debtor is not in Material Default under the Plan. If the Debtor is in Material Default under the Plan, then effected creditors may: (i) move this court for relief from stay to take any actions permitted under non-bankruptcy law to enforce the terms of the Plan or (ii) move to dismiss this case or to convert this case to a Chapter 7 bankruptcy case.

8.7     Material Default Defined. If Debtor fails to make any payment required under the Plan or to perform any other obligation required under the Plan for more than 14 days after the time

specified in the Plan, the effected creditor may serve upon Debtor and Debtor's attorney (if any) a written notice of default.  The Debtor is in Material Default under the Plan if the Debtor fails within 21 days of the service of such notice of default either: (a) to cure the default or (b) to obtain from the Court an extension of time to cure the default or a determination that no default occurred.

8.8     Retention of Jurisdiction.  This court will retain jurisdiction to the extent provided by law.

8.9     Causes of Action.  Debtors retain any pre-petition causes of action arising before confirmation of the Plan including causes of action held by a trustee under the Code.  The right to pursue such actions continues after Confirmation of the Plan and the Court has jurisdiction to hear such complaints.   Confirmation of the Plan does not release any Claim held by Debtors or the estate, unless the Plan or Confirmation Order specifically and unambiguously so provide.

**Article IX: Post-Confirmation Status Reports**

9.1     Status Reports.  Debtors shall file quarterly post-confirmation status reports with the Bankruptcy Court until dismissal of the case, conversion of the case, or entry of a decree closing the case.

**Article X.     Amendments or Modifications to the Plan**

10.1    General Arrangements.  This Plan may be amended or modified in the manner prescribed in Code section 1127.  A holder of a Claim that has accepted or rejected this Plan is deemed to have accepted or rejected, as the case may be, this Plan as modified, unless, within applicable time periods, such holder changes its previous acceptance or rejection.

10.2    Amendment of the Plan.  At any time before Confirmation of the Plan, Debtors may modify the Plan under Code Section 1127(a); provided that such alteration, amendment, or modification does not materially and adversely affect the treatment and rights of the holders of Claims under this Plan.  After the Confirmation of the Plan and before Substantial Consummation of the Plan as defined in Code section 1101(2), Debtors may, under Code section 1127(b), move to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation order.  At any time after Confirmation of the Plan, Debtors may modify the Plan so long as such modification is accomplished consistent with the Code.

10.3    Revocation or Withdrawal of the Plan.  Debtors reserve the right to revoke or withdraw this Plan at any time before Confirmation of the Plan.

10.4    Reservation of Rights.  Neither the filing of the Plan or Disclosure Statement, or provision contained in the Plan or in the Disclosure Statement, nor the taking by any party in interest of any action with respect to the Plan, shall (a) be or be deemed to be an admission against interest, and (b) until the Effective Date of the Plan, be or be deemed to be a waiver of any rights any party in interest may have (i) against any other party in interest, or (ii) in any of the assets of any other party in interest, and, until the Effective Date of the Plan, all such rights are specifically reserved.  If the Plan is not confirmed or fails to become effective, neither the Plan nor the Disclosure Statement may be used or relied upon in any manner in any suit, action, proceeding, or controversy within or without this Chapter 11 Case involving Debtors or their estate, except with respect to Confirmation of the Plan.

**Article XI: Voting**

11.1    Acceptance/Rejection Votes.  To the extent any Class impaired under the Plan and entitled to vote does not accept the Plan by the requisite statutory majority provided in section 1126(c) of the Code, or is deemed to have rejected the Plan, Debtors shall request confirmation of the Plan under section1129(b) of the Code.

11.2     Impaired Classes to vote.  Each holder of a Claim in an impaired Class is entitled to vote separately to accept or reject this Plan, unless such holder is deemed to accept or reject this Plan.

11.3     Acceptance by Class of Creditors.  An impaired Class of holders of Claims has accepted this Plan if this Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject this Plan.  A Class of holders of Claims is deemed to accept this Plan if no holder of a Claim within that Class submits a ballot by the deadline for the return of ballots.  Debtors request Confirmation of this Plan under sections 1129(a) and 1129(b) of the Code.

**Article XII: Jurisdiction of the Court**

The Court retains jurisdiction until the Plan has been fully consummated including, but not limited to, the following purposes:

12.1     Classification of Claims.  The Court retains jurisdiction until the Plan has been fully consummated for the purpose of classifying Claims, reexamining Claims which have been allowed for the purpose of voting and determining such objection as may be filed to Claims.  The failure to object to or examine any Claims for the purposes of voting shall not be deemed to be a waiver of the right to object to or reexamine the Claim.

12.2     Determination of Disputes.  The Court retains jurisdiction until the Plan has been fully consummated for the purpose of determining questions and disputes regarding title to Assets of the estate and determining causes of action, controversies, disputes, or conflicts between Debtors and any party relating to assets or Claims whether or not subject to action pending as of the date of confirmation.

12.3     Correction of Defect.  The Court retains jurisdiction to correct any defect, cure any omissions, or reconcile any inconsistency in the Plan as may be necessary to carry out the purpose and intent of the Plan.

12.4     Modification.  The Court retains jurisdiction under the Code and the Bankruptcy Rules to modify the Plan after Confirmation.

12.5     Enforcement.  The Court retains jurisdiction to enforce and interpret the Plan and to enter any order necessary to enforce the rights, title, and powers of Debtors and to impose such limitations, restrictions, terms, and conditions concerning such rights, title, and powers as the Court may deem necessary.

12.6     Determination of Default.  The Court retains jurisdiction to determine whether a default has occurred under the Plan and may make such orders as the Court may deem necessary to enforce the Plan including ordering a modification of the Plan, converting the case to Chapter 7, or such other relief as may be appropriate.

12.7     Causes of Action.  Debtors retain any pre-petition causes of action arising before confirmation of the Plan including causes of action held by a trustee under the Code.  The right to pursue such actions continues after Confirmation of the Plan and the Court has jurisdiction to hear such complaints.

12.8     Entry of Discharge.  The Court retains jurisdiction to enter an order discharging Debtors upon Debtors' application, and the Court may enter discharge under any term of § 1141(d)(5) of the Code.

12.9     Termination.  The Court retains jurisdiction to enter an order concluding and terminating this case.

**Article XIII:  General Provisions**

13.1     Definitions and Rules of Construction.  The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in the Plan.

13.2     Effective Date of Plan.  The Effective Date of the Plan is 14 days following the date of the entry of the order confirming the Plan; provided, however, the Effective Date of the Plan may, as a part of such order, be deferred.

13.3     Severability.  If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or effect the enforceability and operative effect of any other provision of the Plan.

13.4    Cramdown.  Debtor reserves the right to seek confirmation of the Plan notwithstanding the rejection of the Plan by one or more classes of creditors, pursuant to § 1129(b) of the Bankruptcy Code.

13.5    Binding Effect.  The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

13.6    Captions.  The headings contained in this Plan are for convenience of reference only and do not effect the meaning or interpretation of the Plan.

13.7    Controlling Effect.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of California govern the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise provided in this Plan.

13.8    Effectuating Documents; Further Transactions.  Debtors are authorized and directed to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and the Confirmation order, and to take all actions necessary or appropriate to effectuate the provisions of this Plan.  Debtors may engage counsel to assist in its duties, including counsel who may have previously represented Debtors or Debtors-in-possession.

13.9    Modification of Payment Terms.  At any time after the Effective Date of the Plan, Debtors may modify the treatment of any Allowed Claim, so long as the holder whose Allowed Claim is being adversely affected consents in writing.

13.10   De Minimis Distributions.  Notwithstanding anything to the contrary contained in the Plan, Debtors shall not disburse cash to the holder of an Allowed Claim in an impaired class of claims if the amount of cash otherwise due for such distributions is less than $5.00.

13.11   Reconciliation with the Disclosure Statement.  Because the Plan and the Disclosure

Statement are interactive, they should be reconciled and consistent with each other.  However, the terms of this Plan supersede any statements in the Disclosure Statement and shall control.

Dated: May 25, 2011

        Respectfully submitted,
        By:_____/s/ Jamie Thomas_____
            Jamie Thomas, Debtor

        By:_____/s/ James Thomas_____
            James Thomas, Joint Debtor

**APPROVED:**

By: /s/ Kirk Brennan

Kirk Brennan, attorney for debtors