FILED
May 29, 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0003526784


Kirk Brennan, esq.
Attorney for Debtors
21250 Hawthorne Blvd.
Suite 500
Torrance, CA 90503
T.310-922-9330; F.310-375-6141
calilawoffice@gmail.com
SBN: 265730

Attorney for Debtors Jamie
Thomas and James Thomas

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| In re: | Case No.: 2011-10912 |
| | |
| JAMIE THOMAS and | DCN: KB-9 |
| JAMES THOMAS, | Chapter 11 |
| | |
| | DATE: June 29, 2011 |
| | TIME: 2 P.M. |
| | PLACE:1st floor, 1300 18th |
| Debtors. | St., Bakersfield, CA |
| | |
| | Judge: Whitney Rimel |

**DEBTORS' DISCLOSURE STATEMENT DATED MAY 25, 2011**

**I.     Introduction**

This is the Disclosure Statement (the "Disclosure Statement") in the individual Chapter 11 case of Jamie Thomas and James Thomas ("Debtors"). Debtors filed a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code on January 26, 2011. This Disclosure Statement contains information about the Debtors and describes Debtors' Plan of Reorganization

(the "Plan").  A full copy of the Plan accompanies this Disclosure Statement.  *Your rights may be affected.  You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.*

### A.   Purpose of This Document

This Disclosure Statement describes:

- Debtors and significant events during the bankruptcy case,
- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the plan is confirmed),
- Who can vote on or object to the Plan,
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
- Why Debtors believe the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement.  This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.  The Disclosure Statement is provided to the holders of claims for the purpose of providing adequate information to claimants so that claimants can arrive at an informed decision in exercising their right to accept or reject the Plan.

Your vote to accept or reject the Plan is important.  The Plan can be confirmed by the Court if it is accepted by the holders of claims in each class of claims voting on the Plan.  Furthermore, the Court can confirm the Plan if it finds that the Plan accords fair and equitable treatment to the class rejecting it if the requisite acceptances are not obtained.

EVERY ATTEMPT HAS BEEN MADE TO PROVIDE ACCURATE INFORMATION IN THIS STATEMENT.  HOWEVER, EXCEPT AS OTHERWISE SET FORTH HEREIN, THE INFORMATION HAS NOT BEEN SUBJECT OF A CERTIFIED AUDIT.  NO REPRESENTATIONS ARE AUTHORIZED BY DEBTORS EXCEPT AS SET FORTH IN THIS STATEMENT. THE INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT COMES FROM DEBTORS AND THEIR ATTORNEY.  HOWEVER, JAMIE THOMAS AND JAMES THOMAS, ARE THE PRIMARY SOURCES OF INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT AND REPRESENT THE BEST SOURCES OF INFORMATION CONCERNING THEIR ASSETS AND LIABILITIES.  IF INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS ALSO CONTAINED IN THE PLAN FILED HEREWITH, THE TERMS OF THE PLAN ARE CONTROLLING.

**B.**     **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Debtors' Plan of Reorganization or approved the adequacy of the Disclosure Statement.  Debtors have provided a separate notice of the hearing on the  Disclosure Statement.  If you want additional information about the Disclosure Statement or Plan, you should contact Kirk Brennan, Esq, 21250 Hawthorne Blvd., Suite 500, Torrance, CA 90503.

**C.**     **Discharge Upon Payment of Certain Claims**

**The Plan of Reorganization that accompanies this Disclosure Statement proposes that under 11 U.S.C. 1141(d)(5)(A), Debtors will receive a discharge of all claims upon the completion of the payments to Class 3(a) and 4 creditors, which is anticipated to be on or before October 1, 2016.**

**II.     Background**

**A.**         **Description and History of the Debtors**

Debtors Jamie Thomas and James Thomas are individual debtors who filed under chapter 11 because of the debt limits of chapter 13.  Jamie Thomas is a homemaker and James Thomas is a salesman with expertise in lighting.  Jamie Thomas owns their principal residence and one rental property.  The Thomas fell behind on payments on their rental property and other bills when Mr. Thomas was unemployed in 2008 and 2009.  The Thomas have also suffered from the devastating fall in real estate values that has afflicted the state, and have watched the value of their properties plummet.  Mr. Thomas has found employment, and the couple is now prepared to get a fresh start.

**B.**         **Background of Events Leading to the Chapter 11 Filing**

The main cause of the bankruptcy filing was Mr. Thomas long period of unemployment in 2008 and 2009.  The fall in housing values was also a factor, and Debtors lost several investment properties to foreclosure over the last couple of years.

**C.**         **Significant Events in Chapter 11 Case**

Debtors have performed or have been involved in the following significant events since filing their Voluntary Petition:

1. Continued Operations

Debtors have operated as debtors in possession since the commencement of the case and a trustee has not been sought or appointed.  Mr. Thomas has found new employment in his field of electrical sales, and his employment income is steady.  Debtors continue to operate the rental property, and rentals have begun to pick up with the beginning of the summer season.  Rentals are generally short-term due to the rental property's most profitable use as a vacation home. Tenants are lined up for May, and debtors continue to market the property for future months.

2.  Employment of Professionals

Debtors have obtained authorization from the Bankruptcy Court to employ Kirk Brennan

of California Law Office, P.C. as their attorney of record.  The employment of their attorney has assisted Debtors in their reorganization efforts, increasing Debtors' ability to repay their creditors.  Attorney fees in the amount of $13,290 and expenses in the amount of $1189.12 were allowed by the court on May 25, 2011.

Debtors have obtained authorization from the Bankruptcy Court to employ Dennis Burkart as their accountant to assist them with tax and accounting matters, including filing of their taxes.  No fee application has been filed for Mr. Burkart to date.

### 3. Motions to Value Collateral

Debtors have filed three motions to value collateral.  One motion seeks to value debtors' primary residence and seeks an order deeming the second deed of trust completely unsecured. This motion has been granted.  A second motion seeks to value the debtors' rental property and seeks an order deeming the second deed of trust completely unsecured and the first deed of trust partially secured and partially unsecured.  This motion has also been granted.  The third motion seeks to value the debtors' Subaru Forrester, and seeks an order bifurcating the claim of Kern Federal Credit Union into secured and unsecured claims.  This motion is pending.  The hearing on the motion is scheduled for June 29, 2011 at 2 P.M..

### 4. Motions for Relief from Stay

There have been no Motions for Relief from Stay filed in Debtors' case.

### 5. Objections to Proof of Claim

On April 4, 2011, debtors filed an objection to proof of claim 4.  On May 11, 2011 Saxon Mortgage filed a response to debtors' objection to proof of claim 4.  On May 18, 2011, debtors filed an amended objection to proof of claim 4.  The objection and amended objection seek a disallowance of proof of claim 4 in its entirety on the primary grounds that the claimant lacks standing.  A hearing was held on May 25, 2011, and the Court ordered the parties file a

Statement of Disputed and Undisputed Facts by June 22, 2011.  A continued hearing on the amended objection to claim is to be held June 29, 2011 at 2 P.M..

### 6. Monthly Operating Reports and UST Fees

All Monthly Operating Reports that have come due since the filing of the case have been filed and all U.S. Trustee fees that have come due since the filing of the case have been paid.

**D.        Projected Recovery of Avoidable Transfers**

Debtors do not believe that there were any preferences or fraudulent transfers made by Debtors before the filing of their Voluntary Petition.  Therefore, Debtors do not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

**E.        Claims Objections**

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, Debtors reserve the right to object to claims.  Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.  The procedures for resolving disputed claims are set forth in Article III of the Plan.

**F.        Current and Historical Financial Conditions**

From February 1, 2011 through April 30, 2011 Debtors generated gross receipts in the amount of $50,174.91 and disbursements in the amount of $37,740.14.  Receipts include $13,054.31 in funds transferred from pre-filing bank accounts to debtors new debtor-in-possession account.

The Monthly Operating Reports contain additional information about the cash receipts and disbursements since debtors filed for relief under chapter 11.  The Monthly Operating Reports for February through April 2011 are on file with the United States Bankruptcy Court and are also available by request through debtors' counsel.

**G.        Projections**

Debtor's Declaration of Current/Post-Petition Income and Expenses, prepared as of May 25, 2011 and attached hereto as Exhibit C, provides projections for the Debtors Income and Expenses going forward.  Debtors project monthly income of $9100 and monthly expenses of $8709.62.

**H.**        **Current Assets**

A copy of debtors Schedules A and B, are attached as Exhibit A.  Debtors believe the valuations in these schedules continue to be accurate, with the exception of the bank accounts, which have been closed and the funds transferred to the debtor in possession bank account.  The balance of the debtor in possession bank account was $12,434.77 as of the end of April.  All assets listed on the Schedules A and B are exempt.

**I.**        **Legal Proceedings**

Debtors are not involved in any legal proceedings outside of the bankruptcy case.


**III. Summary of the Plan of Reorganization and Treatment of Claims**

**A.**        **What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive.  The Plan also states whether each class of claims or equity interests is impaired or unimpaired.  If the Plan is confirmed, your recovery will be limited to the amount provided for by the Plan.

**B.**        **Classified Claims**

1. Class 1: Priority Claims.

This class includes allowed claims entitled to priority under § 507 of the Bankruptcy Code (except administrative claims under § 507(a) and priority tax claims).

X  None.

2. Class 2:  Unimpaired secured claims.

Debtors' Disclosure Statement

7

This class includes claims secured by a lien on property in which Debtor has an interest that are unimpaired under the Plan. Debtor will cure any default that occurred before or after the petition date in this case, reinstate the maturity of that claim as such maturity existed before the default, maintain current payments, and not otherwise alter the legal, equitable or contractual rights to which that claim entitles the holder of the claim. All arrearages shall be paid in full on the Effective Date, unless the holder of the claim agrees to other terms. Regular payments made thereafter will be made when due ("Regular Monthly Payments") under the documents governing the claim.

These classes are unimpaired and not entitled to vote on the Plan.

<u>Class 2(a)  Secured claim of:  Bank of America</u>

Collateral description = 28710 Gleneagle Ct, Tehachapi, CA 93561

Principal owed = $403,331 (at time of filing of petition)

Pre-petition arrearages paid on the effective date = N/A

Regular Monthly Payments = $2406.26 (includes insurance and taxes)

<u>Class 2(b)  Secured claim of: Kern Schools Federal Credit Union</u>

Collateral description = 2005 Chrysler PT Cruiser

Principal owed = $3243.68 (at time of filing of petition)

Pre-petition arrearages paid on the effective date = N/A

Regular Monthly Payments = $265.11

<u>Class 2(c)  Secured claim of: Kern Schools Federal Credit Union</u>

Collateral description = 2005 Dodge Magnum

Principal owed = $11,690.92  (at time of filing of petition)

Pre-petition arrearages paid on the effective date = N/A

Regular Monthly Payments = $495.71

<u>3. Class 3: Other Secured Claims</u>

This class includes claims secured by a lien on property in which Debtor has an interest, other than the unimpaired secured claims in Class 2, to the extent of the value of that creditor's interest in Debtor's interest in the property, pursuant to § 506 of the Bankruptcy Code.

The amount of the claim, if any, in excess of the secured claim is an unsecured claim which will be paid under Class 4.

Debtor has filed a separately noticed motion asking the court to determine that the value of the collateral is the value stated below.  If a secured creditor does not oppose the motion to value its collateral, the value stated by Debtor may be determined to be the value of the collateral.

To the extent that there are any defaults that are not being cured or paid in full on or before the effective date ("Cure Payment"), those classes are impaired and entitled to vote on the Plan.

Class 3 claims and their proposed treatment under the Plan are:

<u>Class 3(a) Secured claim of:  Kern Federal Credit Union</u>

Collateral description = 2006 Subaru Forrester

Total claim (at petition date) = $10,390.36

Value of collateral at time of filing of petition = $8390

Post-petition interest, etc., if any = N/A

Allowed secured claim = $8390

Allowed unsecured claim = $2000.96   (paid as a Class 4 Claim)

Regular Monthly Payments = $155.46

Payments begin = first month due after plan confirmation  (See Article VI)

Payments end = after 60 months of payments, or sooner if paid in full

Interest rate = 4.25 % fixed per annum, amortized over 5 years

Kern Federal Credit Union must release any encumbrance of record that it holds against the 2006 Subaru Forrester property after the Class 3(a) claim is paid in full.

Class 3(b) Secured claim of:  Wilmington Trust Company

**An objection to the proof of claim of Wilmington Trust Company has been filed.  The proposed treatment below will apply if the objection fails, and the claim is allowed.**

Collateral description = 310 Utah Avenue, Oceano, CA 93445

Total claim (per proof of claim 4; disputed by debtors) = $639,193.48

Value of collateral at time of filing of petition = $250,000

Post-petition interest, etc., if any = N/A

Allowed secured claim = $250,000

Allowed unsecured claim = $389,193.48   (paid as a Class 4 Claim)

Regular Monthly Payments = $1229.85

Payments begin = first month due after plan confirmation  (See Article V)

Payments end = after 360 months of payments, or sooner if paid in full

Interest rate = 4.25 % fixed per annum, amortized over 30 years

Wilmington Trust Company, or its successors or assigns, must reconvey its deed of trust and release any other encumbrance of record that it holds against the 310 Utah Avenue, Oceano, CA property after the Class 3(b) claim is paid in full.

4. Class 4: General Unsecured Claims.

This class includes allowed claims of general unsecured creditors.  Class 4 claims also include (a) deficiency claims of secured creditors who have foreclosed on and liquidated their collateral (if any), (b) secured creditors who have first or second deeds of trust against real property owned by Debtors, which have been deemed to be partially or wholly unsecured for purposes of this Plan, and (c) general unsecured claims arising out of the rejection of executory contracts and unexpired leases (if any).  This class is impaired and entitled to vote on

confirmation of the Plan.  Total Class 4 claims are approximately $663,255.29.  This includes approximately $434,689.23 in unsecured portions of loans previously secured by first and second deeds of trust, but now treated as unsecured.  Undisputed Class 4 claims, as of this date, are listed on Exhibit B.

Class 4 claims do not accrue interest.  Each member of Class 4 shall be paid a pro rata share of its claim over five years in equal quarterly installments.  Debtors will distribute a pro rata share of quarterly payments of $1171.14 to Class 4 claimants on the first day of each calendar quarter, beginning as described in Article VI.  Pro rata means the percentage that a particular creditor's Class 4 claim bears to the aggregate of all allowed Class 4 claims.  Twenty quarterly payments (4 quarters times five years) of $1171.14 come to a total of $23,422.80, which is estimated to pay about 4% of the total of class 4 claims.

Second deed of trust holders whose claims have been deemed by the Court to be totally unsecured are required to reconvey the deeds of trust to the debtors upon discharge.

5. Class 5: Interests of the Debtors.

The Class Five claims are the claims or interests held by Debtors.  Debtors retain their assets and shall not be required to liquidate any of their assets except as provided in the Plan. Additionally, Debtors shall manage their affairs subject to the provisions of the Plan without the appointment of a trustee or other outside management or control.  The assets owned by Debtors shall revest in Debtors upon entry of their general discharge.

**C.        Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.

1. Creditors Having Administrative Expense Claims

Under Bankruptcy Code § 1123(a)(1), (i) administrative expense claims allowed under Bankruptcy Code § 503 and entitled to priority under § 507(a)(including professional fees owed to attorneys, accountants, or other professionals retained by Debtors during the pendency of the case; United States Trustee fees; and domestic support obligations arising post petition) and (ii) priority tax claims under § 507(a)(8) are not classified and are not entitled to vote on confirmation of the Plan.  These claims shall be treated as follows:

a.) Professional Fees.  Professional fees may only be paid upon application to, and approval by, the Bankruptcy Court.  Debtors will pay the professional fees in full in cash on the later of (i) the Effective Date or (ii) approval by the Court, except to the extent that a holder of such claim agrees to other terms.

Attorney fees in the amount of $13,290 and expenses in the amount of $1189.12 have already been allowed to debtors' counsel for work done through April 21, 2011.  Debtors' counsel has continued to work on debtors' case since that time and estimates future attorney fees and expenses of roughly the same amount as those already allowed; i.e. roughly $13,000 in attorney's fees and $1500 in expenses.

Debtors estimate that their accountant, Dennis Burkart, will charge them under $1000 for work done on their behalf.  No accountant fees have been applied for to date.

b.) Other Administrative Claims.  Debtor will pay other claims allowed under § 503 and entitled to priority under § 507(a), including U.S Trustee fees, in full on the Effective Date (although expenses arising and paid in the ordinary course of Debtor's financial affairs may be paid as due), except to the extent that a holder of these claims agrees to other terms.

Debtors believe that the only other administrative claims are U.S. Trustee fees and they are estimated to be $650.

2. Tax Claims.  Debtor will pay claims entitled to priority under § 507(a)(8) in full over time with interest in equal amortizing payments in accordance § 511 of the Bankruptcy Code.

Payments will be made monthly, due on the first day of the month, starting as described in Article VI and ending on the last such date that is no more than 5 years after the petition date. Payment of priority tax claims in full within 5 years of the order for relief and on terms not less favorable than those accorded the most favored non-priority creditor is required by § 1129(9)(C).

X       None.  There are no tax claims.  Therefore no distribution will be made on tax claims.

**D.       Allowance and Disallowance of Claims**

1. Disputed Claim

A disputed claim is a claim that has not been allowed or disallowed and as to which either: (i) a proof of claim has been filed or deemed filed and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed and the Debtor has scheduled such claim as disputed, contingent, unliquidated or unknown.  Except as otherwise provided in the Plan, Debtors may object to the allowance of Claims filed with the Court.  All objections may be litigated to Final Order, or compromised, or withdrawn.  The deadline to file a proof of claim for all creditors except a governmental unit is June 1, 2011. The deadline for a governmental unit is July 25, 2011.

The following claims have been disputed by Debtors:

a.) Schedule D claim of Saxon Mortgage (objection to proof of claim also filed)

b.) Schedule F claim of Anthem Blue Cross

c.) Schedule F claim of Hilco Rec

d.) Schedule F claim of Indymac Bank

e.) Schedule F claim of Indymac Bank (2nd of 2)

f.) Schedule F claim of Midland Credit Management

g.) Schedule F claim of Nelnet with "unknown" amount

h.) Schedule F claim of Robert Reed

i.) Schedule F claim of Seegers Printing

j.) Schedule F claim of Todd Brown with "unknown" amount

<u>Delayed Distribution on Disputed Claims</u>

No distribution will be made on account of a disputed claim unless that claim is allowed by final non-appealable order.

<u>2. Settlement of Disputed Claims</u>

The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**E.        Claims Handling**

<u>1. Ownership and Transfer of Claims</u>

For purposes of any Distribution under the Plan, Debtors have no obligation to recognize any transfer of Claims occurring on or after the Distribution date.  Debtors are permitted to recognize and deal for all purposes with only those Claimants of record stated on the claims docket maintained by the Court, or scheduled in the list of creditors filed with the Court under Bankruptcy Rule 1007 and not listed as disputed, contingent, or unliquidated as to amount, and to which no objection has been interposed.

<u>2. Amendments to Claims</u>

In order for Debtors to settle disputes and otherwise implement the Plan, a proof of claim may be amended to increase or liquidate the amount or priority of such Claim after the deadline to file claims, but only as agreed upon by Debtors and the holder of such Claim, or as otherwise permitted by the Court, the Bankruptcy Rules or applicable law.  Without limiting the previous sentence in any manner, unless otherwise provided in the Plan, proofs of claim shall not be filed or amended after Confirmation of the Plan unless the amendment is solely to decrease the

amount or priority of the Claim.  Any such new or amended Claim filed after the Confirmation of the Plan is disallowed in full and is expunged without any action by Debtors.

**F.**        **Executory Contracts and Unexpired Leases**

1. Executory Contracts and Leases Assumed

The Debtor assumes the following executory contracts and unexpired leases, effective upon the Effective Date, and shall perform all obligations thereunder, both pre-confirmation and post-confirmation:

Debtors' several short-term rental agreements with tenants of their rental property in Oceano.

2. Executory Contracts and Leases Rejected

The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not previously assumed or listed in 5.1 above, as of the Effective Date.  A proof of claim arising from the rejection of an executor contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan.  Claims arising from the rejection of an executory contract or unexpired lease under this section are general unsecured claims in Class 4, except to the extent this court orders otherwise.

Debtors are not aware of any executory contracts or leases other than those listed in the paragraph above.

**G.**        **Implementation**

1. Plan Funding

The Plan will be funded from the disposable income of the Debtors, including salary from joint debtor's employment, royalty income, and rental income from the rental property in Oceano.  After the Effective Date of the Plan and after paying Unclassified Claims and post-confirmation professional fees, on a quarterly basis and without further approval of the Bankruptcy Court, the Debtors shall distribute the quarterly payment of $1171.14 on a pro rata

basis to Class 4 claimants.  Pro rata means the percentage that a particular creditor's Class 4

claim bears to the aggregate of all allowed Class 4 claims.

### 2. Method of Payment

The method of payment is at the election of Debtors, but may include, without limitation,

bank check, business check, or wire transfer.

### 3. Means of Distribution

Distributions by mail to holders of Allowed Claims is made as follows:  (1) at the

addresses set forth on the respective proofs of claim by such holders, or if no proof of claim was

filed, at the address listed on Debtors' Schedules; (2) at the addresses set forth in any written

notices of address changes delivered to Debtors after the date of any related proof of claim; or,

(3) at the address designated in any written agreement between Debtors and such Claimants or so

designated by order of the Court.

### 4. Holding of and Failure to Claim, Undeliverable Distributions

All Distributions are to be made by Debtors to the holder of each Allowed Claim at the

holder's address as described under section 6.3.  If any holder's Distribution is returned as

undeliverable, no further Distributions to such holder is made unless and until Debtors are

notified of such holder's then current address, at which time all required Distributions are made

to such Claimant.  Undeliverable Distributions are held by Debtors until such Distributions are

claimed, so long as they are claimed within ninety (90) days following a Distribution.  After 90

days, all unclaimed Distributions revert to Debtors, and the Claim of any Claimant or its

successor with respect to the Distribution is discharged and forever barred, notwithstanding any

federal or state escheat laws to the contrary.

**H.        Continued Operations**

### 1. Debtors' Post-Confirmation Operations of Rental Property

Debtors shall continue to manage their rental property including, but not limited to: finding tenants, billing tenants, paying ordinary costs and current taxes without further order of the Court, and prosecuting any claims related to their rental operations.

### 2. Debtors' Post-Confirmation Operations Generally

Debtors retain the right to prosecute all claims arising from any dispute involving Debtors or any property within their control;

### 3. Post-Confirmation Expenses

The reorganized Debtors are entitled to expend funds reasonably necessary to carry out the terms of the Plan. Debtors must pay professional fees and costs only upon application to and approval of the Court for services provided through confirmation of the Plan. Debtors must pay the expenses incurred post-Confirmation, including professional fees and costs, in the ordinary course of business.

**I.        Risk Factors**

There is risk to creditors associated with the confirmation of the Plan. The primary risk to creditors is that Debtors will fail to complete the payments required by the Plan and that the case will be dismissed, or converted to one under Chapter 7.

Dismissal of the Chapter 11 case would likely result in secured creditors repossessing and liquidating their collateral. Secured creditors would incur delay and expense to recover and liquidate their collateral.

If the case is converted to one under Chapter 7, secured creditors would likely foreclose against their collateral, and incur that delay and expense. Debtors have no non-exempt property so the Chapter 7 trustee would have no assets to distribute to unsecured creditors.

Therefore, the benefits associated with the Plan outweigh the risks, and the Plan represents the best chance for all creditors to receive payment on their claims.

**J.        Tax Attributes**

Debtors are individuals and do not anticipate any tax implications by the Plan.

**K.        Amendments or Modifications to the Plan**

### 1. General Arrangements

This Plan may be amended or modified in the manner prescribed in Code section 1127. A holder of a Claim that has accepted or rejected this Plan is deemed to have accepted or rejected, as the case may be, this Plan as modified, unless, within applicable time periods, such holder changes its previous acceptance or rejection.

### 2. Revocation or Withdrawal of the Plan

Debtors reserve the right to revoke or withdraw this Plan at any time before Confirmation of the Plan.

### 3. Reservation of Rights

Neither the filing of the Plan or Disclosure Statement, or provision contained in the Plan or in the Disclosure Statement, nor the taking by any party in interest of any action with respect to the Plan, shall (a) be or be deemed to be an admission against interest, and (b) until the Effective Date of the Plan, be or be deemed to be a waiver of any rights any party in interest may have (i) against any other party in interest, or (ii) in any of the assets of any other party in interest, and, until the Effective Date of the Plan, all such rights are specifically reserved. If the Plan is not confirmed or fails to become effective, neither the Plan nor the Disclosure Statement may be used or relied upon in any manner in any suit, action, proceeding, or controversy within or without this Chapter 11 Case involving Debtors or their estate, except with respect to Confirmation of the Plan.

**L.        Jurisdiction of the Court**

The Court retains jurisdiction until the Plan has been fully consummated including, but not limited to, the following purposes:

### 1. Classification of Claims

Debtors' Disclosure Statement

18

The Court retains jurisdiction until the Plan has been fully consummated for the purpose of classifying Claims, reexamining Claims which have been allowed for the purpose of voting and determining such objection as may be filed to Claims.  The failure to object to or examine any Claims for the purposes of voting shall not be deemed to be a waiver of the right to object to or reexamine the Claim.

### 2. Determination of Disputes

The Court retains jurisdiction until the Plan has been fully consummated for the purpose of determining questions and disputes regarding title to Assets of the estate and determining causes of action, controversies, disputes, or conflicts between Debtors and any party relating to assets or Claims whether or not subject to action pending as of the date of confirmation.

### 3. Correction of Defect

The Court retains jurisdiction to correct any defect, cure any omissions, or reconcile any inconsistency in the Plan as may be necessary to carry out the purpose and intent of the Plan.

### 4. Modification

The Court retains jurisdiction under the Code and the Bankruptcy Rules to modify the Plan after Confirmation.

### 5. Enforcement

The Court retains jurisdiction to enforce and interpret the Plan and to enter any order necessary to enforce the rights, title, and powers of Debtors and to impose such limitations, restrictions, terms, and conditions concerning such rights, title, and powers as the Court may deem necessary.

### 6. Determination of Default

The Court retains jurisdiction to determine whether a default has occurred under the Plan and may make such orders as the Court may deem necessary to enforce the Plan including

ordering a modification of the Plan, converting the case to Chapter 7, or such other relief as may be appropriate.

### 7. Causes of Action

Debtors retain any pre-petition causes of action arising before confirmation of the Plan including causes of action held by a trustee under the Code. The right to pursue such actions continues after Confirmation of the Plan and the Court has jurisdiction to hear such complaints.

### 8. Entry of Discharge

The Court retains jurisdiction to enter an order discharging Debtors upon Debtors' application, and the Court may enter discharge under any term of § 1141(d)(5) of the Code.

### 9. Termination

The Court retains jurisdiction to enter an order concluding and terminating this case.

## IV.    Confirmation Requirements and Procedures

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A.        Who May Vote or Object?

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or

equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, Debtors believe that Classes 3(a) and 4 are impaired and that holders of allowed claims in those classes are therefore entitled to vote to accept or reject the Plan. A determination as to whether the creditor in Class 3(b) holds an allowed claim has yet to be made by the Court, as the amended objection to this creditor's claim is still pending.

There are no Class 1 claims, Class 2 (a, b,and c) Claims are unimpaired, and Class 5 claims are the interests of the debtors. The holders of claims in these classes, therefore, do not have the right to vote to accept or reject the Plan.

### 1. What Is an Allowed Claim or an Allowed Equity Interest?

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) Debtors have scheduled the claim on their schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

### 2. What Is an Impaired Claim or Impaired Equity Interest?

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3. Who is Not Entitled to Vote

The holders of five types of claims and equity interests are *not* entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;
- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.
- holders of claims or equity interests in unimpaired classes;
- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code;
- holders of claims or equity interests in classes that do not receive or retain any value under the Plan; and
- administrative expenses.

Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan.

### 4. Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

**B.      Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by a cram down on non-accepting classes.

### 1. Votes Necessary for a Class to Accept the Plan

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

    2. Treatment of Nonaccepting Classes

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not discriminate unfairly", and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

**C.**          **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation. There is no non-exempt property of the debtors. Therefore the liquidation value of the debtors' estate is $0.

Debtors believe that creditors will receive a greater dividend in their Chapter 11 case than would be available in a Chapter 7 case because the Plan provides that: (1) Administrative claimants and priority creditors shall receive payment in full of their claims; and (2) Secured creditors retain their liens against the properties until paid off, and shall receive monthly payments under the Plan. Debtors believe that their secured creditors would be granted relief from the automatic stay and permitted to foreclose against their collateral in a Chapter 7 case. But the liquidation of collateral would not result in payment in full of all of the debt owed to their secured creditors and deficiencies would remain. This is true because the real property securing the debts owed to their creditors is worth far less than the amount actually owed. Furthermore, Debtors believe that general unsecured creditors would receive nothing in a

Chapter 7 liquidation since there are no non-exempt assets, and there are administrative costs and costs of liquidating personal property.

**D.        Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors, unless such liquidation or reorganization is proposed in the Plan.

1. Ability to Initially Fund Plan

Debtors believe that they will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on that date, including U.S. Trustee fees and accountant fees, but with the exception of attorney's fees.  Attorney for debtors has agreed to allow debtors time to pay the amounts owed to attorney.

2. Ability to Make Future Plan Payments and Operate Without Further Reorganization

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.  Debtors have projected financial information concerning their anticipated income and expenses.  Those projections are attached as Exhibit "C." Debtors' financial projections show that they will have monthly disposal income of $390.38, after payments to secured creditors, which comes to quarterly disposable income of $1171.14. Debtors will be allocating this full $1171.14 amount to payments to unsecured creditors. Debtors believe that the projected cash flow will be sufficient to make the payments to unsecured creditors that are required under the Plan.  The final Plan payment to general unsecured claims is expected to be paid, at the latest, in October 2016.

**V.        Effects of Confirmation of Plan and Discharge**

**A.        Terms Binding**

On the effective date of the Plan, all provisions of this Plan are binding upon Debtors, all Claimants, and all individuals and entities who are effected by the Plan.

**B.**         **Plan Creates New Obligations**

The payments promised in the Plan constitute new contractual obligations that replace those obligations to creditors that existed prior to the Effective Date.

**C.**         **Creditor Action Restrained**

Creditors may not take any action to enforce either pre-confirmation obligations or obligations due under the Plan, so long as the Debtor is not in Material Default under the Plan.  If the Debtor is in Material Default under the Plan, then effected creditors may: (i) move this court for relief from stay to take any actions permitted under non-bankruptcy law to enforce the terms of the Plan or (ii) move to dismiss this case or to convert this case to a Chapter 7 bankruptcy case.

**D.**         **Material Default Defined**

If Debtor fails to make any payment required under the Plan  or to perform any other obligation required under the Plan for more than 14 days after the time specified in the Plan, the effected creditor may serve upon Debtor and Debtor's attorney (if any) a written notice of default.  The Debtor is in Material Default under the Plan if the Debtor fails within 21 days of the service of such notice of default either: (a) to cure the default or (b) to obtain from the Court an extension of time to cure the default or a determination that no default occurred.

**E.**         **Retention of Jurisdiction**

This court will retain jurisdiction to the extent provided by law.

**F.**         **Causes of Action**

Debtors retain any pre-petition causes of action arising before confirmation of the Plan including causes of action held by a trustee under the Code.  The right to pursue such actions continues after Confirmation of the Plan and the Court has jurisdiction to hear such complaints.

Confirmation of the Plan does not release any Claim held by Debtors or the estate, unless the Plan or Confirmation Order specifically and unambiguously so provide.

### G.        Modification of Plan

After the Confirmation of the Plan and before Substantial Consummation of the Plan as defined in Code section 1101(2), Debtors may, under Code section 1127(b), move to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation order.  At any time after Confirmation of the Plan, Debtors may modify the Plan so long as such modification is accomplished consistent with the Code.  A holder of a Claim that has accepted or rejected the Plan is deemed to have accepted or rejected, as the case may be, the Plan as modified, unless, within applicable time periods, such holder changes its previous acceptance or rejection.

### H.        Post-Confirmation Status Reports

Debtors shall file quarterly post-confirmation status reports with the Bankruptcy Court until dismissal of the case, conversion of the case, or entry of a decree closing the case.

### I.        Discharge of Debtors

11 U.S.C. Section 1141(d)(5)(A) provides that in an individual Chapter 11 case, unless the court orders otherwise, the Plan does not discharge the Debtors until completion of the payments required under the Plan.  Because Debtors have real property mortgages that will not be paid in full for 30 years, delaying Debtors' discharge for that period is not practical or required.  Therefore, upon completion of Class 3(a) and Class 4 payments required under the Plan, the Debtors will be discharged from any debt that arose before confirmation of the Plan, whether or not the creditor files a proof of claim, accepts the Plan, or has its claim allowed.  Except that the Debtors will not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, or (iii) of a kind specified in § 1141(d)(6)(B).

Such discharge will not discharge Debtor from any debts that are non-dischargeable under § 523 of the Bankruptcy Code.  The Court retains jurisdiction to enter an order discharging Debtors upon Debtors' application, and the Court may enter discharge under any term of § 1141(d)(5) of the Code.

**J.        Vesting of Property**

Property of the estate will not revest in Debtor until such time as a discharge is granted or the court approves a written waiver of discharge.

**K.        Injunction**

Upon entry of discharge, Claimants are permanently enjoined from commencing or continuing any action to collect, recover, or offset any released Claim as a personal liability of Debtors, as provided by section 524 of the Code.

**L.        Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, Debtors, or such other party as the Court shall designate in the Plan Confirmation Order, must file a motion with the Court to obtain a Final Decree to close the case.  Alternatively, the Court may enter such a final decree on its own motion.

**VI.    Alternatives to Plan**

Dismissal of the case or conversion to Chapter 7 are alternatives available to Debtors if the Plan is not confirmed.  Debtors believe that confirmation of the Plan is preferable to the dismissal of its case because dismissal of the case would likely result in foreclosure by secured creditors of the rental properties, reducing the income available to pay claims.  If the case was dismissed, creditors would file lawsuits against Debtors to liquidate their claims and would attempt to levy against Debtors' property or income.

Debtors also believe that confirmation of the Plan is preferable to converting the case to one under Chapter 7, because conversion of the case would also likely result in foreclosure by secured creditors of the real properties.  General unsecured creditors would not receive any payment on their claims if the case was converted to Chapter 7, because once a Chapter 7 trustee paid administrative expenses, costs of sale, and priority claims, unsecured creditors would receive no dividend.

Date: May 25, 2011

By _/s/ Jamie Thomas_____
   JAMIE THOMAS

By _/s/ James Thomas_____
   JAMES THOMAS

**APPROVED:**

By _/s/ Kirk Brennan_____
  Kirk Brennan, esq., Attorney for Debtors